IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF LABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATHANIEL WATKINS, ) | |
| ) | |
| CLAIMANT, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. |
| ) | 2:15-CV-1508-KOB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| RESPONDENT. ) | |
| ) | |

MEMORANDUM OPINION

I. INTRODUCTION

On September 28, 2012, the claimant, Nathaniel Watkins, protectively applied for disability benefits under Title II of the Social Security Act. (R. 62, 116-17). In his application, the claimant alleged disability beginning on June 25, 2011, because of degenerative joint disease, osteoarthritis in his left knee, lumbar degenerative disc disease, obesity, chronic and severe pain, hypertension, and diabetes mellitus. (R. 14-15). The Commissioner denied the claims on December 12, 2012.  The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on March 10, 2014. (R. 24-45).

In a decision dated April 11, 2014, the ALJ found that the claimant was not disabled as defined by the Social Security Act and was, therefore, ineligible for social security benefits. (R. 12-20). On August 6, 2015, the Appeals Council denied the

1

claimant's requests for review. (R. 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

Whether substantial evidence supports the little weight that the ALJ gave to the opinion of the claimant's treating physician Dr. William Hall.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the ALJ's decision if she applied the correct legal standards and if substantial evidence supports her factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No…presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions, such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors, "are not medical opinions,…but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are

dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets a Listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A). To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?

>  (5) Is the person unable to perform any other work within the economy?
>
>  An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

## V. FACTS

The claimant was sixty-three years old at the time of the ALJ's final decision (R. 27); has a college education (R. 174); has past relevant work as a customer service representative (R. 42-43); and alleges disability based on degenerative joint disease, osteoarthritis in his left knee, lumbar degenerative disc disease, obesity, chronic and severe pain, hypertension, and diabetes mellitus (R. 14-15).

*Physical Impairments*

In 2008, the claimant sought treatment with Dr. William Hall at Arlington Health Center on February 4 and September 25 for chronic neck and back pain that resulted from a prior car accident.[1] He also returned to Dr. Hall on December 19 complaining of hand cramps, shoulder pain, and tingling in his left leg. Dr. Hall prescribed Neurontin for nerve pain. (R. 242-47).

The claimant saw Dr. Hall on March 16, April 21, and September 30, 2009, complaining of hand cramps or pain, shoulder pain, and leg swelling. At the September 30 visit, the claimant indicated that he fell a month prior, but the record gives no details regarding the fall. (R. 237-241).

---

[1] The record does not reflect the date of the prior car accident.

On December 13, 2009, Dr. Hall ordered a CT of the claimant's abdomen after he presented to the Emergency Department at Baptist Princeton complaining of abdominal pain, back pain, nausea, and vomiting. The CT images revealed that the claimant had inflammation of his gallbladder and degenerative disc disease at L4-L5 and L5-S1. (R. 231-234).

In 2010, the claimant sought treatment with Dr. Hall on April 22 and December 30, both times complaining of neck pain. He also complained of knee, leg, and back pain at the December visit. Under "Review of Systems: Musc.," Dr. Hall noted that the claimant's musculoskeletal system was abnormal, stating "usual back, neck pain." (R. 226-228).

The claimant saw Dr. Hall once in 2011, and the notes for that June 14 visit show that the examination of the claimant's musculoskeletal system was "normal" and revealed no issues. (R. 225).

From January to May, 2012, the claimant sought treatment with Dr. Hall on four occasions for cough-related symptoms, but the claimant did not mention back or neck pain during any those visits. The claimant did complain of hand and foot cramps during the April 10 visit. However, Dr. Hall marked the claimant's musculoskeletal system as "normal" for all four visits. (R. 217-224).

On August 29, 2012, the claimant presented to Dr. Hall complaining of tingling in his left leg unrelated to activity and upper leg pain that radiated down his leg. Dr. Hall ordered an x-ray of the claimant's left knee that showed degenerative joint disease and osteoarthritis, with no explanation as to any limitations based on these findings. When The Disability Examiner Tracy Gulledge wrote Dr. Hall a letter asking him to explain his finding based on the x-ray, Dr. Hall responded that the claimant had "limited flexion" in

5

his knee because of his pain; that the pain increased with standing and walking; and that he had a limp in his left leg. (R. 216, 259).

A few months later on November 14, 2012, Dr. Hall treated the claimant for back pain that the claimant stated "hurt all the time." Dr. Hall noted that the claimant had an unsteady gait and that he could not sit, stand, or walk without pain and that he had not started the Neurontin for his tingling. (R. 260).

At the request of the Social Security Administration, Dr. Celtin Robinson, an internal medical doctor, evaluated the claimant's physical condition. Dr. Robinson personally examined the claimant and reviewed his records from Baptist Princeton and Arlington Health. The claimant reported generalized joint pain "all over" resulting from a car accident in 2004, including pain in his cervical neck region, left shoulder, hip joint, knee joint, and lower back. He also stated that his pain is "3-4/10" at rest; that he has "severe" pain of "6-7/10" in his knee when he stands or walks for more than fifteen minutes; that he has "been on opioids and acetaminophen since the accident;" and that he had to discontinue physical therapy and chiropractic help after "the loss of his job" when the company downsized because he could no longer afford the treatment. (R. 266-267).

Regarding his activities of daily living, the claimant told Dr. Robinson that he takes care of his personal needs; prepares coffee; watches television for a couple of hours; prepares a simple meal, but usually eats at a restaurant. He can sweep a room and make his bed, but his sister does the other household chores. He also reported going to a restaurant daily and talking to customers.

Dr. Robinson listed the claimant's medications as Cyclobenzaprine for muscle spasms; Atenolol/Chlorthalidone, Spironolactone, and Losartan for high blood pressure; Simvastatin for high cholesterol; and Glyburide for diabetes. In the "Review of Systems"

section, Dr. Robinson noted that the claimant has "[o]ccasional paresthesias of the left hand in a glove distribution, which feels like numbness" and that he has "no motor or sensory deficits." (R. 267).

During his physical examination of the claimant, Dr. Robinson noted that the claimant was able to walk into the exam room without assistance; could sit with "mild" body pain; could get on and off the table; had a normal gait; could toe-heel walk and squat and rise; had full range of motion in his spine and knees; had no tenderness to palpation of his hands, legs or joints; had normal motor strength of 5/5; and had a negative straight leg test. Dr. Robinson's diagnoses included "Joint pain all over, as per claimant" and diabetic neuropathy, but he provided no limitations for the claimant. (R. 267-269).

At the request of the claimant's attorney, Dr. Hall completed a "Physical Capacities Evaluation" and a "Clinical Assessment of Pain" for the claimant on February 19, 2013. Dr. Hall assessed that the claimant could lift and carry ten pounds occasionally or less frequently; could sit three hours and stand two hours during an eight-hour work day; could drive a car; could never push or pull with arm or leg controls, climb ladders, or stoop; and could occasionally use gross and fine manipulation, bend, and reach. Dr. Hall marked that the claimant was a "Class II" based on the "New York Heart Association Classification."[2] He assessed the claimant's pain as "present to such an extent as to be distracting to adequate performance of daily activities or work" and indicated that physical activity increases the claimant's pain "to such an extent that

---

[2] A Class II classification indicates a patient with "cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation; dyspnea, or angina pain."
https://www.sunshineheart.com/patients/classifications-of-heart-failure/

bedrest and/or medication is necessary." Dr. Hall concluded that the side effects of the claimant's medications "totally restrict him" and make him unable to "function at a productive level of work." (R. 271-272).

Between April and December 2013, the claimant returned to Dr. Hall on eight occasions complaining of back, neck and leg pain on April 3, April 10, May 16, June 20, August 20, October 2, November 4, and December 16. On the physical examination section of his reports, Dr. Hall marked the claimant's musculoskeletal system as "normal" for all these visits except the April 4 and August 20 visits. The claimant reported limited mobility in his back on April 3, and Dr. Hall gave him trigger point injection in his back on April 10. The claimant reported severe lumbar disc and cervical disc pain on May 16, and on August 20 he stated that his leg pain had increased and worsened when he walked. On November 4, the claimant indicated his back and leg ached all day and reported "aggravated pain" in his left hip and leg on December 16. (R. 288-299).

The claimant returned to Dr. Hall on January 3, 6, and 16, 2014, complaining of continued pain in his back that kept him in bed for several days. He received a steroid and anti-inflammatory shot on January 3, but Dr. Hall marked his musculoskeletal system physical examination as "normal" during the January 3 and 6 visits. A bone scan of his spine performed on January 6 was normal. The claimant stated on January 16 that his back pain initially improved after his shot, but had returned, and Dr. Hall marked his musculoskeletal system as "abnormal" on this date and gave him a trigger pinpoint injection in his back. (R. 276-287).

On January 16, 2014, the claimant completed a current medication list. He indicated he was taking Cyclobenzaprine for muscle spasms; Atenalol and

8

Spironolactone for high blood pressure; Lasartan Potassium to protect his kidneys; Simyastatin for high cholesterol; Glyburide for diabetes; and 800 mg of Ibuprofen and 200 mg of Advil as needed for pain.  (R. 207).

The claimant visited Dr. Hall on February 17, 2017, stating that his back pain was "stable but still present."  Dr. Hall marked the "Musc" section of the "Review of Systems" as "normal," but did not check either "normal" or "abnormal" under the "Musc" section under physical examination.  (R. 276).

*The ALJ Hearing*

At the hearing before the ALJ on March 10, 2014, the claimant testified that he worked at AT&T as a customer service representative until around June or July 2011.  He said he did not "resign," but he came out of his job "through the downsizing."  The claimant stated that he started receiving Social Security in February 2013, and that he received unemployment benefits for about a year, from 2011 when he stopped working until sometime in 2012.  According to the claimant, he told someone at the unemployment office that he was unable to work because of his "medical problems," but he wanted to work, and they still gave him unemployment benefits.  He still has health insurance through his former employer but has to pay for the benefits.  (R. 30-32).

When asked why he cannot work, the claimant testified that has "so many problems with my back and taking my medicine for my different problems."  He stated that his medicines "sometimes" make him drowsy, causing him to take longer to do things in the morning and at work.  He testified that he takes Cyclobenzaprine when needed; he took that medication before he stopped working; and "it makes [him] so drowsy. He also takes medications that control his high blood pressure.  He stated that he also takes Simvastatin for his cholesterol and Metformin for his diabetes, but his diabetes

9

currently is under control. For pain, he takes 800 mgs of Ibuprofen that he says "helps my pain," and he sometimes takes 200 mg of Advil in between his Ibuprofen doses. When the ALJ specifically asked the claimant "Do you have any side effects of your medication?" he replied "Not that I know of." He also stated that he changes positions a lot and uses a heat pad to help with the pain. (R 33-35, 39).

The claimant testified that he weighs about 280 pounds and that he lives with his brother and sister. Describing a typical day, he stated that he gets up, showers, eats, reads a little, goes to get coffee at Waffle House for about an hour, and goes back home to watch television. He can sit and watch a television program for about a half hour, but has to get up and walk around to loosen his back and then sit back down. Standing for too long hurts his back and causes pains to go down his left leg, and he can stand in one place for about ten to fifteen minutes before he starts hurting. (R. 27, 37-38).

He drives to a laundromat a few blocks away every two to three weeks to do his laundry. The claimant testified that he does not "go out too much," and the last time he went on a trip was to Selma about a year ago for a funeral. He does go to the grocery store and can lift "necessary stuff" but does not do any heavy lifting. (R. 27-30, 39).

A vocational expert, Dr. Russell,[3] testified concerning the type and availability of jobs that the claimant was able to perform. Dr. Russell testified that the claimant's past relevant work was as a customer service representative, classified as sedentary, skilled work. The ALJ asked Dr. Russell to assume a hypothetical individual the same age, education, and experience as the claimant with a residual functional capacity to perform work who can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never use ladders, ropes, or scaffolds; and can occasionally push and pull with

---

[3] The record does not contain Dr. Russell's first name.

bilateral lower extremities.  Dr. Russell testified that individual could perform the claimant's past work.  (R. 41-43).

In his second hypothetical, the ALJ asked Dr. Russell to assume all of the prior limitations except the individual can only perform sedentary work and must be allowed to stand and stretch for a minute or two at his work station every hour as needed while remaining at task.  Dr. Russell testified that individual could  perform the claimant's past work  (R. 43-44).

*The ALJ's Decision*

On April 11, 2014, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 12-20). First, the ALJ found that the claimant met the insured status requirements of the Social Security Act through September 30, 2016, and had not engaged in substantial gainful activity since his alleged onset date of June 25, 2011.  (R. 14).

Next, the ALJ found that the claimant had the severe impairments of degenerative joint disease and osteoarthritis of the left knee, lumbar degenerative disc disease, and obesity.  However, the ALJ found that the claimant's diabetes mellitus, hypertension, cervical disc disease, and generalized joint pain were non-severe impairment.  The ALJ acknowledged his diabetes, but stated that no electrodiagnostic or other objective reports confirm his diabetic neuropathy.  He noted that the claimant had full strength and sensation in all of his extremities on physical examinations and that he was noncompliant with taking his Neurontin for the tingling.  (R. 14-15).

Regarding his hypertension, the ALJ found that the record does not reflect any adverse symptoms from his high blood pressure and that the claimant testified that his medications control it.

11

The ALJ acknowledged that the claimant complains of neck pain and that Dr. Hall diagnosed him with cervical disc disease. However, the ALJ found no objective imaging in the record to support that diagnosis and stated that no physical examinations of the claimant revealed any abnormalities in his cervical spine.  Therefore, the ALJ concluded that the claimant's cervical disc disease was "not medically determinable."  (R. 15).

Likewise, the ALJ found that the claimant's generalized "joint pain" all over his body was not a medically determinable impairment because no objective imaging tests supporting joint pain in any other locations other than the claimant's knees and lumbar spine.  (R. 15).

The ALJ next found that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17-18).  The ALJ considered whether the claimant met the criteria for Listings 1.02 and 1.04, involving musculoskeletal and spine disorders and found that the claimant's impairments met neither listing because no evidence exists in the record that the claimant has nerve root compression with motor, sensory, or reflex loss; spinal arachnoiditis; or lumbar spinal stenosis resulting in an inability to ambulate effectively.  The ALJ also considered the claimant's obesity in making his determination.  (R. 15-16).

Next, the ALJ determined that the claimant has the residual functional capacity to perform sedentary work except that the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs; can never climb ladders, ropes, or scaffolds; can occasionally push and pull with the bilateral extremities; and must be allowed to stand and stretch for one to two minutes at his workstation every hour as needed, while remaining on task.  (R. 16).

In making this finding, the ALJ considered the claimant's symptoms and corresponding medical record. The ALJ concluded that, although the claimant's medically determinable impairments could reasonably be expected to cause his symptoms, the claimant's allegations regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible when compared with the evidence. Specifically, the ALJ noted that the objective evidence, treatment history, and physical examination findings of Dr. Hall do not support the debilitating nature of the claimant's alleged degenerative joint disease and osteoarthritis of his left knee.  The ALJ acknowledged the August 2012 x-ray and diagnosis, but he noted that Dr. Hall did not document any objective signs of any limitations based on those diagnoses.

Regarding the claimant's lumbar degenerative disc disease, the ALJ noted that the claimant's treatment records fail to show the type of "significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled."  The ALJ acknowledged the December 2009 CT that revealed the diagnosis, but noted that the January 2014 bone scan appeared normal.  The ALJ noted that Dr. Hall's physical examinations of the claimant "did not document signs of back pain"; that Dr. Hall repeatedly noted that the claimant's "musculoskeletal system was normal"; that "even without signs of pain or limitations on physical examination," Dr. Hall gave the claimant a trigger point injection in April 2013; and that the claimant said he was in pain, but Dr. Hall's "examinations were negative for any objective signs of limitations."  The ALJ stated that "no clinical abnormalities [were] documented on physical examination."  (R. 17-18).

The ALJ took into account the claimant's obesity in finding that it could reasonably exacerbate his pain in his knee and back, which could cause some limitations.

13

Therefore, the ALJ found that, in combination with all of his impairments, the claimant's obesity warranted a reduction to sedentary work. (R. 18).

In assessing the intensity of the claimant's pain, the ALJ noted that the claimant's treatment was limited to Ibuprofen and a muscle relaxer, which he claimed he did not take regularly. The ALJ also referenced the claimant's hearing testimony that he took opioid medication for several years while he continued to work; drives; frequents restaurants with friends; sweeps; and fixes simple meals despite his allegations.

The ALJ gave little weight to the claimant's treating physician Dr. Hall because his own treatment records did not support the degree of limitation he attributed to the claimant. The ALJ pointed out that Dr. Hall's treatment records showed normal physical findings despite the claimant's complaints of pain. After discussing the consulting examiner Dr. Robertson's findings in detail, the ALJ noted that Dr. Robertson's findings also showed no abnormalities in his physical examination of the claimant.

Based on the record as a whole, his finding that the claimant can perform sedentary work with the limitations listed in the residual functional capacity, and the vocational expert's testimony at the hearing, the ALJ found that the claimant is capable of performing his past relevant work as a customer service representative. Therefore, the ALJ concluded that the claimant was not disabled as defined in the Social Security Act.

## VI. DISCUSSION

The claimant argues that the ALJ erred in the little weight he gave to the claimant's treating physician Dr. Hall. The court disagrees and finds that substantial evidence supports the ALJ's reasons for discrediting Dr. Hall's opinion.

The ALJ must give the testimony of a *treating physician* substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v.*

14

*Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

An ALJ may discount a treating physician's opinion when it is conclusory; when the treating physician fails to provide objective medical evidence to support it; when the opinion is inconsistent with the record as a whole; or when the evidence otherwise supports a different conclusion. *See* 20 C.F.R. § 404.1527(c). Where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and substantial evidence supports those reasons, the ALJ does not commit reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In the present case, the court finds that substantial evidence supports the reasons the ALJ gave to discredit the opinion of Dr. Hall. The ALJ gave Dr. Hall's opinion regarding the claimant's limitations little weight because those limitations were inconsistent with Dr. Hall's own treatment records. The ALJ pointed out several times that, although the claimant complained of pain in his knees, back, and legs, Dr. Hall repeatedly noted the claimant's musculoskeletal system as "normal" on the physical examination portion of the treatment records. He also noted that Dr. Hall's treatment records showed no clinical abnormalities resulting from his physical examination of the claimant. Although Dr. Hall's treatment records do not reflect what he actually did during his physical examination of the claimant during each visit, his records showed no indication of any tenderness, limited range of motion, or any other objective sign of limitations because of the pain for almost all of these visits. Dr. Hall's assessment of the claimant's musculoskeletal system as "normal" even when the claimant reported pain

supports the ALJ's finding that Dr. Hall's records are inconsistent with the severe limitations he attributed to the claimant based on that pain.

In addition to Dr. Hall's opinion being inconsistent with his own treatment records, the ALJ articulated that Dr. Hall's opinion also contradicted Dr. Robinson's findings upon his physical examination of the claimant. Dr. Robinson's notes indicate that he performed specific, objective physical examinations of the claimant that showed the claimant had full range of motion in his spine and knees; had no tenderness to palpation in his legs or joints; had a normal gait; could toe-heel walk and squat and rise; and had a negative straight leg test. Interestingly, the claimant reported to Dr. Robinson that he considered a pain level of "6-7/10" as "severe" pain in his knee when he stands or walks for more than fifteen minutes. The court notes that the ALJ's residual functional capacity determination of sedentary work accounts for the claimant's complaint regarding his pain.

The ALJ also noted the conservative nature of Dr. Hall's treatment of the claimant for his pain. Dr. Hall treated the claimant's pain with Ibuprofen and a muscle relaxer, which the claimant admitted he did not take regularly. The ALJ also noted that Dr. Hall on several occasions ordered trigger point injections even though his treatment records showed a "normal" musculoskeletal system during his physical examinations of the claimant. As of February 17, 2014, the claimant noted his back pain was stable even with this conservative treatment.

Furthermore, the court notes that Dr. Hall indicated in his assessment that the claimant could drive, but also assessed that the claimant should "never" push or pull with arm or leg controls. Dr. Hall's findings seem inconsistent because driving a car necessarily involves the use of both arm and leg controls. Moreover, although the

16

claimant testified at the hearing that the muscle relaxant Cyclobenzaprine made him drowsy, Dr. Hall's treatment records make no mention of the claimant reporting any side effects of his medication. Also, the claimant testified at the hearing that he had no side effects from his medications.

The ALJ referenced the claimant's testimony that he allegedly took opioid medications for his pain after his accident while he continued to work for years, and that the claimant continues to drive and frequents the Waffle House *daily* to have coffee with his friends. The court agrees with the ALJ that these facts support that Dr. Hall's opinion regarding the claimant's alleged extreme limitations are inconsistent with his own treatment records and with the record as a whole. Additionally, the court agrees with the ALJ that, contrary to Dr. Hall's opinion, the claimant can perform his past relevant work at a *sedentary* level.

The claimant argues that the ALJ had the duty to re-contact Dr. Hall because of these inconsistencies. The court disagrees. An ALJ has a duty to fully and fairly develop the record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990). However, the ALJ is not obligated to re-contact a physician if he finds his medical opinion to be inconsistent with the record. The Social Security regulations provide that the ALJ "*may* [not must] recontact your treating physician, psychologist, or other medical source" to resolve inconsistencies or insufficiencies in the record. 20 C.F.R. § 404.1520b(c)(1).

In this case, despite Dr. Hall's inconsistent opinion, the ALJ had substantial evidence in the record on which to base his opinion that the claimant could perform work at the sedentary level. The claimant's testimony, the conservative nature of Dr. Hall's treatment of the claimant, and Dr. Robinson's consultative examination results provided

17

substantial evidence in the record, and the ALJ did need to re-contact Dr. Hall to make a determination.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is due to be AFFIRMED.

The court will enter a separate Order in accordance with the Memorandum Opinion.

DONE and ORDERED this 20th day of March, 2017.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT
JUDGE